## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MICHAEL MORGAN and LIBERTY RISK CONSULTING, LLC., | : | |
| | : | |
| Plaintiff, | : | NO. 2:22-cv-1631 |
| | : | |
| v. | : | |
| | : | |
| AMY NOSS, KEITH HICKEY, JOYCE MORGAN, BRITTANY PADUGANAN, and ETBP ENTERPRISES, LLC d/b/a THRIVE TALENT MANAGEMENT | : | |
| | : | |
| Defendants. | : | |

## <u>COMPLAINT</u>

### I.       NATURE OF THIS ACTION

Michael Morgan ("Mr. Morgan") and Liberty Risk Consulting, LLC ("LRC") (collectively the Plaintiffs), by and through their counsel, files this Complaint against former employees Amy Noss ("Noss") Joyce Morgan ("J. Morgan"), Keith Hickey ("Hickey") as well as former client Brittany Paduganan ("Paduganan") and her newly formed  company ETPB Enterprises, LLC d/b/a Thrive Talent Management ("Thrive") (collectively the "Defendants"). Upon information and belief, Noss, J. Morgan, and Hickey are current employees of Thrive. Thrive was founded by Paduganan and competes directly with LRC in providing consulting services for adult film stars through the website *onlyfans.com*.

Noss was LRC's Chief Operating Officer and has a *Non-Disclosure and Non-Solicitation Agreement.*  She abruptly left her employment with LRC in March 2022.  J. Morgan was an Advertising Executive for LRC and also has a *Non-Disclosure and Non-Solicitation Agreement*.  She abruptly resigned in September 2022.   Hickey was a Senior Account Manager

and most recently worked for Influenced Edge – a former company of Mr. Morgan. He abruptly

resigned in May 2022.  Since their resignations, LRC discovered that Noss, J. Morgan, and

Hickey, as well as Paduganan, and Thrive embarked on a scheme to illegally and surreptitiously

gain access to, and misappropriate, LRC's confidential, proprietary, and sensitive trade secrets

by: (1) obtaining confidential and proprietary customer and employee information; and (2)

poaching those customers and employees for Thrive.

In this regard, LRC is aware that Noss had her personal Gmail account set up to be the

email account for lost passwords for Microsoft Office Suite at LRC. When LRC changed her

access password, she was able to get back in to LRC's database by hitting "Forgot Password."

In other words, Noss was accessing confidential LRC information after her resignation from the

company.  LRC has audit logs of Noss being rejected trying to get in, changing the password,

then gaining access to the system.  J. Morgan misappropriated LRC's advertising campaign and

client roster. She shared both pieces of information with Thrive and Paduganan. The

information and documents that Noss, J. Morgan, and Hickey misappropriated on behalf of

Paduganan and their current employer, Thrive, are valuable, only accessible by a limited

number of LRC employees, not known outside of LRC and only to LRC employees and would

be extremely difficult to acquire or independently duplicate.

Paduganan independently, and in a hateful rage, has defamed Mr. Morgan and LRC on

numerous occasions on social media.  Specifically, Paduganan has accused Mr. Morgan of

having a sexually transmitted infection as well as bullying, sex trafficking, harassment, rape,

scams, threats, "pimping," and assault. All accusations are flagrantly false and designed solely

to damage Mr. Morgan's and LRC's reputation.  Paduganan's actions also forced LRC to scrap

an initiative to manage smaller *onlyfans.com* accounts as well as a company and website

(www.my9thcloud.com) Mr. Morgan was creating to serve as an alternative to *onlyfans.com* in the marketplace.

Mr. Morgan and LRC have incurred and will continue to suffer significant damages as a result of Defendants' actions. Indeed, LRC has lost numerous clients as a result of the actions of Defendants, totaling thousands of dollars in revenue per month. LRC has lost employees and referral partners. Defendants' conduct has damaged LRC's and Mr. Morgan's relations and hurt recruitment and retention. This action seeks, in part, preliminary, and permanent, injunctive relief requiring Defendants to return and not use any of LRC's trade secrets and highly confidential and/or proprietary information as well as damages with respect to Defendants' egregious conduct.

## II.   INTRODUCTION

1.   LRC brings this action to protect its valuable client relationships, goodwill, and confidential, proprietary, and/or trade secret information; to enforce Noss's contractual confidentiality obligations; to prevent the Defendants and anyone else acting on their behalf from further misappropriating, using, or disclosing LRC's confidential, proprietary, and trade secret information; and to prohibit the Defendants from unfairly competing with LRC.

2.   Mr. Morgan also brings this action for damages relating to multiple defamatory statements made by Paduganan impacting his reputation and business. He also was forced to discard plans for other lucrative ventures based on Paduganan's defamation.

## III.   PARTIES

3.   Michael Morgan is an adult individual who resides at 2104 Old Erhman Rd., Cranberry Township, PA 16066 and is currently the Chief Executive Officer of LRC.

4.   LRC is a Pennsylvania Limited Liability Company with its headquarters in

Beaver, Pennsylvania.

5.     Defendant Amy Noss is an adult individual who, upon information and belief, resides at 625 Speyer Avenue, Monaca, PA 15061, and is currently employed by Defendant Thrive.

6.     Defendant Joyce Morgan is an adult individual who, upon and information and belief, resides at 2016 Barclay Hill Road, Beaver, PA 15009, and is currently employed by Defendant Thrive.

7.     Defendant Keith Hickey is an adult individual who, upon information and belief, resides at 430 Teece Avenue, Pittsburgh, PA 15202, and is currently employed by Defendant Thrive.

8.     Defendant Brittany Paduganan is an adult individual who, upon information and belief, resides at 6565 Cactus Rd., Glendale, AZ 85304, and founded Defendant Thrive.

9.     Upon information and belief, Defendant ETBP Enterprises, LLC d/b/a Thrive Talent Management is a sole proprietorship owned and operated by Defendant Brittany Paduganan with its headquarters in Arizona.

**IV.     JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c) because Plaintiffs asserts claims under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831, et seq. and the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, et seq.

11.     This Court has supplemental jurisdiction over Plaintiffs' other claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as the federal question claims and all claims arise from a common nucleus of operative facts.

12.     This Court has personal jurisdiction over Noss and J. Morgan because they consented to such jurisdiction in the *Non-Disclosure and Non-Solicitation Agreement*, executed on February 7, 2022 and July 8, 2022 respectively ("the Agreements"), under which Plaintiffs brings their claims for breach of contract in this action. Attached as Exhibit A is a true and correct copy of the Noss and J. Morgan Agreements. Specifically, Section 9 of the Agreements provides:

> …Employee agrees that the exclusive forum for any action to enforce this Agreement, as well as any action relating to or arising out of this Agreement, shall be the state courts of Beaver County, Pennsylvania or the United States District Court for the Western District of Pennsylvania, Pittsburgh Division.

(Ex. A ¶ 9)

13.     This Court has personal jurisdiction over Noss, J. Morgan, and Hickey because they are residents of Pennsylvania, and they committed the acts complained of in this Complaint, in whole or in part, in the Commonwealth of Pennsylvania.

14.     This Court has personal jurisdiction over Defendants Paduganan and Thrive because they have conducted and continue to conduct business in Pennsylvania.  They have several employees who work remotely and perform their jobs in the Commonwealth of Pennsylvania.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(3) because all Defendants are subject to the Court's personal jurisdiction with respect to this action.

16.     The monetary damages are in excess of $75,000, exclusive of interest and costs.

## V.     STATEMENT OF FACTS

### Mr. Morgan, LRC's Business Model and Confidential Information

17.     Mr. Morgan is a Certified Project Management Professional, Scrum Master, and

Marine Corps Combat Veteran with over a decade of managerial experience. He holds a Bachelor's Degree, and Master's Degree in Project Management from Embry-Riddle Aeronautical University.

18.    Mr. Morgan has experience in data analytics, behavioral science and business consulting. He founded LRC in 2019.

19.    LRC is in the highly competitive business of online sales and marketing for *onlyfans.com* models. LRC works as an independent consultant that assists in the growth and monetization of these social media accounts.

20.    LRC's business offerings consist of research on a creator's existing account and suggesting actionable changes that can be integrated into their platform, including search engine operation improvements, pricing model recalibration, identifying specific niches, setting up sales funnels, and cross-promotional strategies.

21.    LRC has spent a significant amount of time and expense developing and maintaining its good will and beneficial business relationship with its customers and employees.

22.    LRC's ability to preserve the confidentiality of its proprietary and confidential information is imperative to its success. Access to LRC's confidential and proprietary business information would give any of its competitors who acquired such information an unfair competitive advantage over LRC. At minimum, a competitor could use LRC's confidential and proprietary information to determine LRC's current and prospective clients, its marketplace strategies, and pricing information to undercut LRC's pricing, and to utilize and/or to counter its strategies and proposals all in an effort to solicit clients away from LRC.

23.    LRC's confidential and proprietary business information includes, inter alia, its proprietary prospect, client and customer lists and information, as well as sales, marketing,

business, and promotional strategies, plans, programs, and pricing.

24.     LRC developed, compiled, or acquired its proprietary and confidential information at great expense and through substantial efforts over many years of work. This confidential and proprietary information is not readily ascertainable in any type of trade or public directory or any other source.

25.     For example, the identity and direct (non-publicly listed) contact information of its clients, along with compilations of this information, would be valuable information to LRC competitors. This information in the hands of a competitor would enable the competitor to limit or negate costly marketing, promotional, and business development strategies designed to locate this very information and solicit business from the right individuals.

26.     The misuse of LRC confidential and proprietary information, whether through the improper disclosure or improper use for a non-LRC business purpose, would cause and has caused significant damage to LRC through potential and actual loss of business and business opportunity, loss of goodwill, loss of employees through unfair and unlawful means, damage to reputation, and other types of harm.

27.     Accordingly, LRC has implemented comprehensive measures to protect and maintain the confidentiality of its confidential and proprietary information, including but not limited to written policies identifying LRC confidential information, the usage of agreements containing confidentiality, non-disclosure, and non-solicitation restrictions, password protected computer systems, limited access to LRC's physical facilities and databases, established safeguards against electronic access to or use of LRC information, and other reasonable efforts under the circumstances.

28.     As a result of such efforts, LRC's confidential information is not available to the

public and is not readily available to its competitors.  This confidential information gives LRC a valuable economic and competitive LRC over others who compete with LRC.

29.     The time, expense, and efforts that have gone into the development of LRC's confidential and proprietary information are significant.

**<u>Noss's, J. Morgan's and Hickey's Employment</u>**

30.     Amy Noss commenced her employment with LRC on January 1, 2020 as Chief Operating Officer.

31.     In her role, Noss was responsible for designing and implementing business strategies, plans, and procedures, setting comprehensive goals for performance and growth, establishing policies that promote company culture and vision, overseeing daily operations of the company and the work of the executives (IT, Marketing, Sales, etc).

32.     J. Morgan commenced her employment with LRC on July 16, 2020 as an Advertising Executive.

33.     In her role, J. Morgan was responsible for supervising the production of ad campaigns and developing plans to increase the sales of LRC.

34.     Keith Hickey commenced his employment by LRC on April 27, 2020 as an Senior Account Manager.  He most recently worked for Influenced Edge, another company that was owned and operated by Mr. Morgan.

35.     As a Senior Account Manager, Hickey was responsible for managing the content of accounts in accordance with specific guidelines and deploying developed and highly refined client engagement strategies based on behavioral science and case studies performed by LRC.

36.     To perform their duties at LRC, Noss, J. Morgan, and Hickey were permitted to access, utilize, and further develop LRC's proprietary and confidential information, including its

confidential information as described above.

## Paduganan as a Client

37.     Paduganan worked with LRC for almost two years before leaving LRC for an overseas company.   Upon information and belief, Paduganan left that company after it underperformed and was believed to have taken employees and information from that company.

38.     At the time Paduganan left LRC, Mr. Morgan informed her she should not bother returning.

39.     Paduganan was incensed and after she left the overseas company, she started Thrive to directly compete with LRC.

## Noss's and J. Morgan's Confidentiality, Property Protection & Non-Solicitation Agreement

40.     In conjunction with and in exchange for valuable consideration, Noss entered into a *Non-Disclosure and Non-Solicitation Agreement* with LRC on February 7, 2022, and J. Morgan entered into her Agreement on July 8, 2022 (attached hereto as Exhibit A.).

41.     As additional consideration for entering into the Agreements, LRC provided Noss and J. Morgan with opportunities for advancement, extensive training, increased responsibility with LRC's customers, and access to LRC's highly confidential, trade secret, and sensitive information.

42.     The Agreements contain, in part, the following acknowledgment regarding confidential and proprietary information:

> Employee acknowledges and agrees that his/her employment by the Company necessarily involves his/her knowledge of and access to confidential and proprietary information pertaining to the business of the Company and the Company's clients and customers. Accordingly, Employee agrees that at all times during

his/her employment and for as long as the information remains confidential after the written authority of the Company, unless directed by applicable legal authority having jurisdiction over Employee, disclose to or use, or knowingly permit to be so disclosed or used, for the benefit of himself/herself, any person, corporation or other entity other than the Company, the following: (a) any information concerning any financial matters, employees of the Company, customer relationships, client relationships, supplier matters, internal organizational matters, current or future plans, or other business affairs of or relating to the Company; (b) any management, operational, trade, technical or other secrets or any other proprietary information or other data of the Company; or (c) any other information related to the Company that has not been published and is not generally known outside of the Company. Employee acknowledges that all of the foregoing constitutes confidential and proprietary information, which is the exclusive property of the Company.

(Exhibit A; ¶1)

43.     Noss and J. Morgan also agreed to the following post-employment restrictions regarding solicitation of LRC's customers and employees, in relevant part:

Employee agrees that during his/her employment and for a period of thirty-six (36) months following the termination of Employee's employment with the Company for any reason, Employee shall not (directly or indirectly) on his/her own behalf or on behalf of any other person or entity solicit, or cause any other person or entity to solicit the business of, accept business from, or do business with: (i) any customer or client of the Company who Employee knows or should have known was a customer or client of the Company during the twenty-four (24) month period immediately preceding Employee's termination; or (ii) request, suggest, or deliberately cause any of the Company's customers or clients to reduce or terminate any business relationship with the Company.

Employee agrees that during his/her employment with the Company and for a period of thirty-six (36) months after the date of Employee's termination of employment with the Company for any reason, Employee shall not (directly or indirectly) on his/her own behalf or on behalf of any other person or entity solicit or induce, or cause any other person or entity to solicit or induce, or attempt to solicit or induce, any employee, consultant vendor or independent contractor to leave the employ of or engagement by the Company or to violate the terms of their contracts with the Company.

(Exhibit A; ¶2)

44.     Noss's and J. Morgan's execution of the Agreements was knowing and informed.

## LRC's Confidentiality, Privacy, and Protection Policies

45.     LRC maintains an associate handbook (the "Handbook") that includes among other things, provisions relating to confidentiality and privacy.

46.     With regard to Confidential Information, LRC's Handbook reads:

> Your employment with LRC necessarily involves your knowledge
> of and access to confidential and proprietary information
> pertaining to the business of LRC and LRC's clients and
> customers. You are not permitted during your employment or
> thereafter, to, directly or indirectly, without the express written
> authority of the Company, unless directed by applicable legal
> authority having jurisdiction over you, disclose to or use, or
> knowingly permit to be so disclosed or used, for the benefit of
> yourself, any person, corporation or other entity other than LRC,
> the following: (a) any information concerning any financial
> matters, employees of LRC, customer relationships, client
> relationships supplier matters, internal organizational matters,
> current or future plans, or other business affairs of or relating to the
> Company; (b) any management, operational, trade, technical or
> other secrets or any other proprietary information or other data of
> LRC; or (c) any other information related to LRC that has not been
> published and is not generally known outside of the Company. All
> of the foregoing constitutes confidential and proprietary
> information, which is the exclusive property of LRC.

47.     The Handbook requires that employees "read it, understand it, and agree to comply with it."

## Defendants Noss, J. Morgan, and Hickey Concerted Illegal Activities Surrounding Their Resignations from LRC and Commencement of Employment with Thrive

48.     In the Summer of 2022, Noss, J. Morgan, and Hickey began conspiring to use LRC confidential and proprietary information to commence employment with Paduganan and Thrive, and to unlawfully solicit, transfer, and subsequently service as many LRC clients as they could.

49.     LRC is aware that Noss had her personal Gmail account set up to be the email

account for lost passwords for Microsoft Office Suite at LRC.

50.     When LRC changed her access password, she was able to get back in to LRC's database by hitting "Forgot Password." Noss would change her password and gain access to LRC's confidential and proprietary information.

51.     In other words, Noss was accessing confidential LRC information ***after*** her resignation from the company.

52.     LRC has audit logs of Noss being rejected trying to get in, changing the password, then gaining access to the system.

53.     J. Morgan misappropriated LRC's advertising campaign and client roster. She shared both pieces of information with Thrive and Paduganan.

54.     Hickey also funneled information to Thrive following his resignation from LRC with the assistance of Noss and J. Morgan.

55.     Paduganan used Hickey to steal LRC's methods.

### Defendant Paduganan Starts Thrive and Defames LRC and its Chief Executive Officer

56.     As alluded to above, after Paduganan left the overseas company, her *onlyfans.com* account faltered and she started Thrive with the sole purpose to steal employees and clients from LRC.

57.     Indeed, instead of competing fairly in the marketplace with LRC, Paduganan sought revenge and began spreading rumors.

58.     She engaged in a widespread campaign to defame LRC and Mr. Morgan.

59.     Paduganan has posted on the social media platform *Instagram* untruths about Mr. Morgan and the company that are demonstrably false and defamatory.

60.     Paduganan's posts are exacerbated by the fact that, at the time, her *Instagram* page

had approximately 1.2 million followers primarily consisting of clients and industry professionals – a niche demographic that, if reached, would exert the most amount of damage to LRC and Mr. Morgan's reputations.

61.     Paduganan has accused Mr. Morgan of having a sexually transmitted infection as well as criminality associated with the management of LRC. In this regard, Paduganan claims that Mr. Morgan routinely created separate and new *onlyfans* pages with user content from his customers for his own "selfish greed." Without any evidence supporting her claims, Paduganan suggests that Mr. Morgan has generated over $600,000 in revenue from his customers' content.

62.     Paduganan has also further accused Mr. Morgan and his associates of bullying, sex trafficking, harassment, rape, scams, threats, "pimping," and assault. All flagrant accusations with no basis in reality.

63.     Before Paduganan's defamatory campaign, LRC and Mr. Morgan had started developing another company to manage smaller *onlyfans.com* accounts (Influenced Edge) as well as spent hundreds of thousands of dollars on another website (www.my9thcloud.com) to serve as an alternative to *onlyfans.com*.

64.     Paduganan hired away almost all of the staff of Influenced Edge and her defamatory statements caused clients to ask Mr. Morgan if he was "stealing."  As a result, Mr. Morgan was forced to shut down these endeavors due to the damage to his reputation caused by Defendant Paduganan.

65.     Needless to say, these events have substantially harmed the reputation of LRC and Mr. Morgan and caused significant damages.

**Thrive's Involvement.**

66.     Upon information and belief, Paduganan and Thrive were working in tandem with

the Noss, J. Morgan, and Hickey to use the data and information they misappropriated from LRC for the purpose of soliciting LRC's current and prospective customers and employees as well as unfairly compete with LRC.

67.     The information that Noss, J. Morgan, and Hickey illegally accessed is exactly the type of data that they could use at Thrive to compete against LRC.

68.     Based on Noss, J. Morgan, and Hickey's knowledge of all the information they illegally accessed and downloaded, they are now positioned to assist Thrive in its competitive activities against LRC, both, in terms of soliciting LRC's prospective and current customers away from LRC to Thrive and planning future efforts directly competitive to LRC.

69.     Upon information and belief, Paduganan has conspired with an individual named Dwight Cunningham to recruit LRC clients to Thrive using the confidential information of LRC.

70.     Thrive's conduct in this regard is willful and malicious.  This conduct is designed and intended to injure LRC by (1) inducing Noss and J. Morgan to breach their Agreements to aid in their competitive efforts and (2) encouraging defendants to misappropriate LRC's confidential and proprietary information.

71.     Thrive has actual or constructive knowledge of the Defendants' misconduct and benefitted from this misconduct.

72.     This conduct is illegal and ongoing.  It has caused (and is continuing to cause) substantial harm to LRC and Mr. Morgan.

73.     Defendants acted together with a common purpose to injure LRC by performing unlawful acts and competing with LRC through unlawful means.

**VI.     CAUSES OF ACTION**

**COUNT I**
**MISAPPROPRIATION OF TRADE SECRETS**

**Defend Trade Secrets Act, 18 U.S.C § 1836 et seq.**
**(Against All Defendants)**

74.     Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if set forth herein.

75.     LRC's Confidential Information and Trade Secrets includes LRC's confidential and proprietary business information which includes, *inter alia*, its proprietary prospect, client and customer lists and information, as well as sales, marketing, business, and pricing.

76.     This data and information are trade secrets of LRC, subject to protection under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 et seq.

77.     LRC uses its trade secrets in interstate commerce as it operates in multiple states, its clients are serviced by individuals across state lines, and its services include marketing and sales services in interstate commerce.

78.     LRC's confidential information and trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use. LRC has spent significant sums, in terms of both financial and human resources, to develop, update and maintain this information, which would be of great value to any competitor, including Thrive.

79.     LRC takes, and at all times here relevant, has taken reasonable measures to maintain the confidential and secret nature of this information.  These efforts include, but are not limited to, the use of agreements containing confidentiality, and non-solicitation restrictions, password protected computer systems, limited access to information within LRC where appropriate, limited access to LRC's facilities, prohibitions on the unauthorized use or transmission of information from LRC, and other reasonable efforts under the circumstances.

80.     As described above, Defendants have improperly and without authorization misappropriated, retained, used, disclosed, and/or exploited LRC's trade secrets that were obtained from LRC's databases and computers.

81.     Defendants Noss, J. Morgan, and Hickey obtained the information at issue by improper means in violation of their contractual and other obligations to LRC by accessing the information unlawfully and/or retaining this information on their personal devices, without any authorization to do so.

82.     Defendants' foregoing conduct constitutes an actual and threatened misappropriation and misuse of LRC's trade secret information in violation of the DTSA.

83.     Upon information and belief, and as LRC expects to establish on further investigation and discovery, Defendants improperly retained, used, and/or disclosed (and continues to retain, use, and/or disclose) to Thrive, LRC's confidential business information with which they worked when they were employed by LRC.  Additionally, Thrive conspired with and/or solicited the Defendants Noss, J. Morgan, and Hickey to appropriate the confidential and trade secret business information of LRC and use it, and/or allowed it to be used to Thrive's economic benefit.

84.     Defendants Noss, J. Morgan, and Hickey engaged in this nefarious conduct despite having a duty to maintain the secrecy of the information on LRC's computers and databases and to limit its use, which duty Defendants Noss, J. Morgan, and Hickey owed and continue to owe LRC as a former agent, employee, and representative of LRC.

85.     Upon information and belief, and as LRC expects to establish on further investigation and discovery, Thrive and Paduganan knew the information was confidential and trade secret information belonging to LRC and Thrive and Paduganan knew of LRC's

Agreements and policies (containing requirements that Defendants Noss, J. Morgan, and Hickey maintain the secrecy of the information).

86.     Defendants' actions create the strong likelihood that Defendants will continue to use and exploit the confidential and trade secret information which Defendants stole from LRC to solicit and acquire LRC's current and prospective clients and employees.

87.     As a direct and proximate result of Defendants' actual and threatened misappropriation of LRC's trade secrets, LRC has suffered irreparable harm and will continue to suffer irreparable harm that cannot be adequately remedied at law unless Defendants are enjoined from engaging in any further acts of misappropriation and from continued possession in any form of trade secret information belonging to LRC.

88.     To the extent that Defendants have already provided LRC's trade secrets or other confidential information to third parties, those parties should also be ordered to return and/or destroy that information.

89.     As a direct and proximate result of Defendants' misappropriation, LRC has suffered and continues to suffer damages and irreparable harm, and is entitled to all damages, attorneys' fees, costs and remedies permitted under the DTSA.

90.     Each of the acts of misappropriation, as alleged in Count I, was done maliciously by Defendants, thereby entitling LRC to exemplary damages to be proved at trial.

**COUNT II**
**MISAPPROPRIATION OF TRADE SECRETS**
**Pennsylvania Uniform Trade Secrets Act, 12 Pa. C. S. § 5301 et seq.**
**(Against All Defendants)**

91.     Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if set forth herein.

92.     The information that Noss, J. Morgan, and Hickey pilfered from LRC constitutes

trade secrets subject to protection under the PUTSA because LRC derives independent economic value from such information not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

93.     LRC took reasonable precautions under the circumstances to protect its trade secrets, and all parties with access to its trade secrets (including Noss, J. Morgan, and Hickey) were subject to obligations to maintain their secrecy.

94.     Upon information and belief, and as LRC expects to establish on further investigation and discovery, Defendants Noss, J. Morgan, and Hickey improperly retained, used, and/or disclosed (and continues to retain use, and/or disclose) to Thrive, LRC's confidential business information.  Specifically, LRC expects to show that the Defendants Noss and Hickey retained its trade secrets based on conduct that includes their theft of LRC confidential and proprietary information following her departure from the company

95.     Defendants Noss, J. Morgan, and Hickey willfully and maliciously misappropriated LRC's trade secrets, by among other acts, using and disclosing LRC's trade secrets without authorization (express or implied) at a time that she knew or had reason to know that she had a duty to LRC to maintain the secrecy and confidentiality of the trade secrets contained in LRC's computers, servers, and databases, instead of using them for their professional advancement and for the benefit of Thrive.

96.     Defendants Noss, J. Morgan, and Hickey's actions create the strong likelihood that Thrive will use and exploit the confidential and trade secret information which these Defendants stole from LRC to solicit and acquire LRC's customers and prospects, and LRC's employees.

97.     Additionally, Thrive has endorsed Defendants Noss, J. Morgan, and Hickey's conduct by failing to exercise any meaningful oversight over them and by directly benefiting from

their actions.

98.     Defendants' conduct described herein constitutes unlawful misappropriation of trade secrets under the PUTSA and justifies the award of exemplary damages and attorneys' fees and costs to LRC.

99.     Defendants' conduct constitutes an actual or threatened misappropriation of trade secrets that forms an adequate, independent basis upon which this Court can enter a preliminary injunction.

100.     As a consequence of the foregoing, LRC has suffered and will continue to suffer irreparable harm and loss.

101.     Unless Defendants are preliminarily and permanently enjoined from further misappropriation of LRC's trade secrets, Defendants will continue to disregard LRC's rights to same and LRC will continue to suffer irreparable harm, loss, and injury.

**COUNT III**
**VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT**
**(Against All Defendants)**

102.     Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if set forth herein.

103.     Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by intentionally accessing LRC's computer systems and software  which are used for interstate commerce or communication, without authorization and by exceeding authorized access to such systems and software and by retaining and transferring information from such protected systems and software, and so causing significant damage.

104.     Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by knowingly, and with intent to defraud LRC through their wrongful actions, accessing LRC's

computer systems and software, which are protected computers, without authorization or by exceeding authorized access to such systems and software, and by means of such conduct, furthering her intended fraud. Noss accessed LRC's protected computer system after her employment with LRC had ended and after her authorization to access LRC's computer system had been revoked to obtain information from LRC's protected computer.  As such, Noss obtained and misappropriated significant and critical confidential and trade secret information relating to LRC's current and prospective customers, vendors, services, pricing information, sales notes, and more.

105.    Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by intentionally accessing LRC's computer systems and software, beyond the scope of the authorization granted, causing damage to LRC and its computers, recklessly or without due regard for her actions. LRC's IT policies and protocols plainly identified its computer systems and software, and its contents as LRC property, and Noss was prohibited from accessing any LRC databases, and was required to return all original and copies of Noss information intact and immediately after her employment ended.

106.    Defendants' aforementioned conduct caused one or more persons loss and damage during any one-year period aggregating at least $5,000.

107.    The LRC computer systems and software that Noss accessed, as described above, are "protected computers" within the meaning of 18 U.S.C. § 1030.

108.    Additionally, Thrive has endorsed Defendants' conduct by failing to exercise any meaningful oversight over and by benefiting directly from their actions.

109.     These actions taken by Defendants are direct violations of the Computer Fraud and Abuse Act—at a minimum, 18 U.S.C. §§ 1030(a)(2), 1030(a)(4), 1030(a)(5), and have

harmed LRC, including, without limitation, harm to LRC's trade secrets and confidential information, including data, metadata, programs, systems, and other information, and impairment of the integrity and availability of data, metadata, programs, systems, and other information.

110.    LRC has also suffered damage and loss through the cost of responding to the offenses.

111.    Defendants' actions also entitle LRC to injunctive relief pursuant to 18 U.S.C. § 1030(g), since they have caused and will continue to cause LRC irreparable injury. Damages, alone, are not adequate to compensate LRC for these actual and threatened injuries. LRC also seeks all other remedies available to it under the law, including actual and consequential damages, attorneys' fees, costs, and punitive damages.

**COUNT IV**
**BREACH OF CONTRACT**
**(Against Defendants Noss and J. Morgan)**

112.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if set forth herein.

113.    Noss and J. Morgan executed a non-solicitation agreement with LRC (defined previously as "the Agreements") which imposed upon them contractual obligations including, among other things, restrictions prohibiting against the solicitation of LRC customers and employees.

114.    The Agreements between LRC and Noss and LRC and J. Morgan are valid and enforceable contracts.

115.    Noss and J. Morgan are subject to and legally bound by the promises made in the Agreements.

116.    The restrictive covenants in the Agreements are reasonable as to time, geographic

scope, and scope of restrained activity.  The Agreements do not impose restraints on Noss and J. Morgan that are greater than necessary to protect LRC's interests.

117.    By inducing, encouraging, and soliciting at least a few LRC customers and employees to leave LRC to, instead work with Thrive, a competitor of LRC's, Noss and J. Morgan breached their Agreements.

118.    The Agreements also imposed upon them contractual obligations regarding restrictions on the use and disclosure of LRC's confidential and trade secret information.

119.    The limitations on the use and disclosure of LRC's confidential information and trade secrets in LRC's employment agreements are reasonable.

120.    Upon information and belief, Noss and J. Morgan breached their contractual obligations regarding the use and disclosure of LRC's confidential information and trade secrets by working in tandem with Thrive to utilize LRC's trade secret information that Noss and J. Morgan acquired by illegally accessing LRC's database without permission, following the termination of their employment with LRC, to solicit LRC's employees and current and prospective customers.

121.    As a direct and proximate result of Noss's and J. Morgan's breach of their contractual obligations, LRC has and is being subject to irreparable harm and damages entitling LRC to an award of injunctive relief and monetary damages.

**COUNT V**
**TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONSHIPS**
**(Against Defendant Thrive)**

122.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if set forth herein.

123.    As set forth herein, Noss and J. Morgan entered into valid and enforceable

Agreements with LRC which imposed certain restrictions and obligations upon Noss and J. Morgan including but not limited to misusing any of LRC's confidential information or trade secrets.

124.    Upon information and belief, Thrive was aware that Noss and J. Morgan was subject to the foregoing covenants and restrictions.

125.    Upon information and belief, Thrive intentionally and without justification interfered with LRC's contractual relationship with Noss and J. Morgan by inducing, aiding and abetting, and encouraging them to violate their contractual covenants and restrictions with LRC.

126.    Thrive's intentional interference with LRC's contractual relationship with Noss and J. Morgan directly and proximately caused material breaches of the Agreements, causing LRC to suffer irreparable harm and damages.

127.    Thrive has acted and is acting with an improper motive and through improper means to procure the breach of, and intentionally interfere with, LRC's contractual relationships with Noss and J. Morgan by supporting and encouraging them to disregard their contractual obligations and obtaining and benefitting economically from their actions to the detriment of LRC.

128.    As a direct and proximate result of Thrive's conduct in this regard, LRC has suffered and will continue to suffer irreparable harm and damages.

129.    Thrive's actions, as described in this Count, were willful and malicious and demonstrate a complete indifference to or a conscious disregard for the rights of LRC, entitling LRC to punitive damages.

### COUNT VI
### UNJUST ENRICHMENT
### (Against All Defendants)

130.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if set forth herein.

131.    As a result of their misconduct as alleged in herein, Defendants have been unjustly enriched or will be unjustly enriched through the use of LRC's confidential, proprietary and trade secret information by allowing them to avoid developing Thrive's own confidential and proprietary information.

132.    Defendants have appreciated, accepted, and retained these benefits under circumstances that would make it unjust and inequitable for Defendants to retain them without payment of value to LRC.

133.    As a result of Defendants' conduct, LRC has suffered and will continue to suffer actual damages and loss, including the loss of confidential information and trade secrets; uncompensated use of LRC's confidential information and trade secrets; the loss of profits and future profits; the loss of goodwill; and other damages, all of which are ongoing.

**COUNT VII**
**UNFAIR COMPETITION**
**(Against All Defendants)**

134.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if set forth herein.

135.    Defendants, by engaging in the conduct described above, have engaged in unfair competition with LRC. Their conduct has caused, and will continue to cause, damage to LRC's business relationships with its clients and other valuable business interests.

136.    Defendants' conduct has been, and continues to be, willful, intentional, and unprivileged, and has caused, and will continue to cause, LRC to suffer immediate, irreparable harm, and other compensatory damages.

137.    Defendants' conduct is contrary to honest business and commercial practices.

138.    Unless Defendants are preliminarily and permanently enjoined, Defendants will continue their conduct alleged herein and LRC will continue to suffer irreparable harm, loss, and injury.

**COUNT VIII**
**CIVIL CONSPIRACY**
**(Against All Defendants)**

139.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if set forth herein.

140.    As described above, Thrive and the Defendants have acted with a common purpose to disclose LRC's confidential information and compete with LRC, and did so against the interests of LRC and in breach of contractual commitments.

141.    There was a meeting of the minds as to the unlawful plan and course of conduct among Thrive and the Defendants.

142.    Defendants knowingly and intentionally agreed to act and did act in concert to commit unlawful acts, including without limitation engaging in activities in violation of LRC's contractual rights, misappropriating Plaintiff's confidential information, tortiously interfering with LRC's relationships, and using improper means and/or methods to divert, and/or attempt to divert, business and/or prospective business away from LRC.  Their agreement and their actions were in reckless disregard of contractual obligations owed to LRC, were calculated to harm LRC, and were done with malice.

143.    Each Defendant knew that the conduct (and planned conduct) of the other Defendants was unlawful, and substantially assisted and encouraged such conduct in furtherance of their tortious plan.

144.    Defendants continue to knowingly and intentionally act in reckless disregard of the confidentiality and restrictive covenants contained in the Agreements.

145.    As a direct and proximate result of the unlawful conduct of Defendants in furtherance of their conspiracy, LRC has suffered and are continuing to suffer damages.

146.    As a consequence thereof, Defendants are jointly and severally liable to LRC in an amount to be determined by the Court, together with costs, interest, and attorneys' fees.

**COUNT IX**
**DEFAMATION PER SE**
**(Against Defendant Paduganan)**

147.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if set forth herein.

148.    As reproduced in full above, Paduganan published several falsehoods on social media relating to LRC and its Chief Executive Officer, Michael Morgan.

149.    Paduganan knew or should have known that her statements were false.

150.    Paduganan's statement was intended to and would cause in its recipient apprehension about LRC and Mr. Morgan's ability to conduct their business.

151.    Paduganan's statement was intended to and would impute to LRC and Mr. Morgan incapacity, unfitness, or want of necessary qualifications to conduct their business.

152.    Paduganan's statement caused LRC and Mr. Morgan damages.

153.    Paduganan's conduct in making the foregoing statements via social media platform Instagram was willful and malicious, entitling LRC and Mr. Morgan to an award of punitive damages.

## VII.   REQUEST FOR RELIEF

WHEREFORE, by virtue of the foregoing acts complained of, Plaintiffs Michael Morgan and Liberty Risk Consulting, LLC respectfully request that this Honorable Court enter one or more orders granting them the following relief:

A.   A preliminary injunction and a permanent injunction requiring Defendants (and any persons acting in concert with them or on their behalf) to:

1. return all LRC property, including property in electronic form, in their possession and forbidding them from using, disclosing or acquiring said property (as well as any work product derived from LRC property);

2. permanently enjoining Defendants from using or disclosing any of LRC's confidential, proprietary or trade secret information or records which Defendants misappropriated from LRC and/or which Defendants have retained in their possession, custody or control; provide a full and complete accounting of all electronic devices, email accounts, cloud-storage accounts, and other devices/accounts that have access to any of the information that Defendants misappropriated as stated in the Complaint;

3. require Defendants to take all necessary efforts to ensure that all electronic devices, email accounts, and cloud storage accounts do not have access to any of LRC's trade secrets, confidential information, and/or proprietary information;

4. take all necessary steps to preserve all potentially relevant evidence regarding the allegations in the Complaint, including, but not limited to, all indicia and potential evidence relating to Defendants' misappropriation of LRC's trade

secrets and confidential/proprietary information, and Thrive's potential access of that same information by (i) any Thrive employee and/or (ii) any and all electronic devices, email accounts, cloud-storage accounts, and the like within its possession, custody or control;

5. comply with the obligations in the Noss and J. Morgan Agreements, attached hereto, as Exhibit A, including but not limited to the confidentiality and non-solicitation provisions; and

6. make available for inspection and imaging any computers, external storage devices, mobile devices, and all personal Cloud and email accounts used or accessed by the Defendants to determine the full extent of Defendants' access, possession, retention, and use of LRC's confidential information or trade secrets;

B. Judgment in favor of Mr. Morgan and LRC and against Noss, J. Morgan, Hickey, Paduganan, and Thrive;

C. An award to Mr. Morgan and LRC of actual and compensatory damages in an amount to be proven at trial;

D. An award to Plaintiffs of punitive and/or exemplary damages;

E. An award to Plaintiffs of pre-judgment and post-judgment interest;

F. An award to Plaintiffs of its reasonable attorneys' fees and its costs incurred in this action; and

G. Such other and further relief as this Court deems just and proper.

## VIII.   JURY DEMAND

Plaintiffs demand a jury trial for all claims that may be heard by a jury.

Respectfully submitted by:

FISHER & PHILLIPS LLP

Date: November 16, 2022     By:     *s/ Brian D. Balonick*
Brian D. Balonick, Esquire
(PA Bar No: 89272)
Erica G. Wilson, Esquire
(PA Bar No. 316343)
**FISHER & PHILLIPS LLP**
Six PPG Place, Suite 830
Pittsburgh, PA 15222
Telephone: (412) 822-6633
bbalonick@fisherphillips.com
ewilson@fisherphillips.com

Jason K. Roberts, Esquire (*pro hav vice*
pending)
(PA Bar No: 210023)
**FISHER & PHILLIPS LLP**
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone: (610) 230-6114
jroberts@fisherphillips.com

*Attorneys for Plaintiffs*
*Michael Morgan and Liberty Risk*
*Consulting, LLC*