**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL MORGAN; LIBERTY RISK CONSULTING, LLC; and INFLUENCED EDGE, LLC,** | ) ) ) | |
| | ) | **Civil Action No.  2:22-cv-01631** |
| **Plaintiffs,** | ) | |
| v. | ) ) | |
| | ) | **Magistrate Judge Lisa Pupo Lenihan** |
| **AMY NOSS, KEITH HICKEY, JOYCE MORGAN, BRITTANY PADUGANAN, and ETBP ENTERPRISES, LLC d/b/a THRIVE TALENT MANAGEMENT,** | ) ) ) ) | **ECF Nos. 32 and 34** |
| | ) | |
| **Defendants.** | ) ) | |

**MEMORANDUM OPINION AND ORDER
ON DEFENDANTS' MOTIONS TO DISMISS**

For the reasons stated herein, the Motion to Dismiss Plaintiff's Amended Complaint,

ECF No. 31, filed by Defendants Brittany Paduganan and ETBP Enterprises, LLC (collectively

"Paduganan Defendants") at ECF No. 32 will be DENIED.  The Motion to Partially Dismiss

Plaintiff's Amended Complaint filed by Defendants Amy Noss, Keith Hickey and Joyce Morgan

(collectively "Former Employee Defendants") at ECF No. 34 will also be DENIED.

**I. PROCEDURAL AND FACTUAL HISTORY**

As reflected in Plaintiffs' Amended Complaint: Michael Morgan is the owner and CEO

of the limited liability corporation Plaintiffs, Liberty Risk Consulting ("LRC") and Influenced

Edge ("IE").  Together, these Pennsylvania Plaintiffs provide consulting services for adult film

stars and models, including former client and Defendant Paduganan.  Plaintiff's consulting

services include online sales and marketing, and business proposals and strategy designs.

The Amended Complaint avers that:  Noss and Morgan were executive employees of LRC, subject to Non-Disclosure and Non-Solicitation Agreements, who left LRC in 2022 when solicited by former client Paduganan for employment by her newly-formed competing LLC, ETBP Enterprises (d/b/a Thrive Talent Management).  Hickey was a Senior Account Manager for LRC who had become an independent contractor for IE, subject to an Agreement containing non-disclosure, non-compete and non-solicitation provisions.  He also left Plaintiffs' employ in 2022 when solicited by Paduganan for competitor employment.  ECF No. 31 at 1-2; ECF Nos. 38-1 and 38-2.[1]  Paduganan was disgruntled at Plaintiff Morgan following a break in their consultant-client relationship and avowed intentions to attack and injure his business and personal reputation.  She then recruited Former Employee Defendants to these ends.

Together, Defendants misappropriated Plaintiffs' trade secrets, accessed and misused Plaintiffs' confidential/proprietary client and other business information, and used that information to "poach" additional employees and customers. The Amended Complaint's further particularized allegations include that at the direction of/in conspiracy with Paduganan: Noss improperly accessed Plaintiffs' password-protected business records/files in LRC's Microsoft account after she resigned and her authorized password access was closed; after her resignation, Morgan improperly retained an LRC-issued computer and used it to access and misappropriate advertising campaign and other client roster/account information; and Hickey improperly provided both password access to Plaintiffs' *OnlyFans* account and client information to Paduganan - who used access and information obtained at her behest to misappropriate

---

[1] Paduganan first contacted and recruited Alysa DeGeorge, another former LRC employee and Pennsylvania resident, and met with DeGeorge and Defendant Hickey in Pittsburgh, Pennsylvania, while performing at a "Gentlemen's Club" in early September 2022.  ECF No. 40 at 2; ECF Nos. 40-1 and 40-2. DeGeorge continued briefly in Paduganan's employ, including performing actions directed against Plaintiffs at Paduganan's behest.  *Id.*  The Paduganan Defendants dispute the Former Employee Defendants' "employee" (vs. independent contractor) status.  ECF No. 33 at 2.

Plaintiffs' other business assets, and who published some of it on social media to further injure Plaintiffs' consulting business.  In addition, Paduganan defamed Plaintiff Michael Morgan on social media, including by false accusations of sex trafficking, rape, and insurance scams, with a purpose of leveraging that defamation's fallout in her solicitation of Plaintiffs' clients and destruction of his businesses.

The Amended Complaint brings the following claims:  Count I and II - Misappropriation of Trade Secrets under the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831, *et seq*., and the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C. S. § 5301 *et seq*., respectively; Count III – Misappropriation of Confidential Business Information under Pennsylvania law; Count IV – Violation of the Federal  Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030*, et seq.*; Count V – Breach of Contract against Noss and Morgan; Count VI – Breach of Contract against Hickey; Count VII – Tortious Interference with Existing Contractual Relationships; Count VIII – Unjust Enrichment; Count IX – Unfair Competition; Count X – Civil Conspiracy; and Counts XI through XII – Defamation Per Se, Defamation and Commercial Disparagement/Trade Libel against Paduganan.  *See generally* ECF No. 31.

The above Motions to Dismiss, ECF Nos. 32 and 34, were filed by the Paduganan Defendants and Former Employee Defendants, respectively.  The former seek dismissal for lack of personal jurisdiction against Arizona resident Paduganan and her Delaware LLC; in the alternative, they move for partial dismissal for failure to state a claim as to the CFAA (Count IV) and tortious interference (Count VII) claims against them.  ECF No. 32.  The Former Employee Defendants move for dismissal for failure to state a claim on the Federal and State statutory trade secrets claims (Counts I and II), under the CFAA (Count IV), on claims for unjust enrichment (Count VIII) and unfair competition (Count IX), and on the conspiracy claim (Count X).  These

Defendants also move for partial dismissal of the (a) misappropriation of confidential business information claims (Count III) and (b) breach of contract claims (Counts V and VI) brought by the LLC Plaintiff not signatory to the particular Defendant's underlying contract (*i.e.*, dismissal of those claims by LRC against Hickey and dismissal of those claims by IE against Noss and Morgan) if the civil conspiracy claim is dismissed.

The parties have filed other appropriate responsive briefing, exhibits and Declarations – including at ECF Nos. 40 (Plaintiffs' Brief in Opposition to Paduganan Defendants' Motion) and 40-1 to 40-3 (Declarations of former LRC and Paduganan employee, Alysa DeGeorge, and of Plaintiff Michael Morgan), ECF No. 41 (Paduganan Defendants' Reply), and ECF Nos. 39 and 42 (Plaintiffs' Brief in Opposition to Former Employee Defendants' Motion and their Reply) -  and the issues raised in said Motions are ripe for disposition.

## II.  STANDARDS OF REVIEW

### A.  <u>Rule 12(b)(6)</u>

Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief."  As further explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler v. UPMC*

*Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quotation marks and citations omitted); see also

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117-18 (3d Cir. 2013);

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

In addition to the complaint, courts may consider matters of public record and other

matters of which they may take judicial notice, court orders, and exhibits attached to the

complaint when adjudicating a motion to dismiss under Rule 12(b)(6) without converting said

motion into one for summary judgment.  *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d

1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and Miller, *Federal Practice and Procedure:*

*Civil 2d,* § 1357; *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808,

812 (3d Cir. 1990)).

### B. <u>Rule 12(b)(2)</u>

The plaintiff has "the burden of demonstrating facts that establish[] personal

jurisdiction" in its pleading. *Fatouros v. Lambrakis*, 627 Fed. Appx. 84, 86–87 (3d Cir. 2015).

*See* ECF No. 31 at 5-6 (asserting particularized bases for personal jurisdiction). When a

defendant challenges a court's exercise of personal jurisdiction in a Rule 12(b)(2) motion, and

the Court does not hold an evidentiary hearing, the plaintiff must only demonstrate a *prima facie*

case for its exercise.  *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009).  It

does so by "establishing with reasonable particularity sufficient contacts between the defendant

and the forum state." *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d

Cir. 1992).[2]  Competent evidence includes, of course, declarations.  *See, e.g.*, *Time Share*

*Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984).  *See also* ECF Nos. 40-1

---

[2] *See also Kyko Glob., Inc. v. Prithvi Info. Sols., Ltd.*, 2020 WL 1159439 (W.D. Pa. 2020) ("[P]laintiff must make a *prima facie* case by furnishing facts that establish with reasonable particularity that personal jurisdiction exists").

to 40-3.[3]

The burden then shifts to the defendant to demonstrate that an exercise of personal jurisdiction by the forum state would violate due process, *i.e.*, the exercise of personal jurisdiction over the defendant would offend traditional notions of fair play and substantial justice. *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 97 (3d Cir. 2004) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)); *Kyko, supra* ("[T]he burden shifts back to a defendant to present a compelling case that personal jurisdiction is unreasonable . . . .").

In considering a Rule 12(b)(2) motion, the Court may take the well-pleaded factual allegations as true and resolve all doubts (*e.g.*, conflicts in the evidence submitted by the parties) in plaintiff's favor. *D'Jamoos v. Pilatus Aircraft Ltd*., 566 F.3d 94, 102 (3d Cir. 2009). As the Paduganan Defendants note, the court considering a challenge to its jurisdiction over a defendant has significant leeway to either hold an evidentiary hearing or decide the matter on the record presented. ECF No. 33 at 4 (citing *Miller Yacht Sales*, *supra*). *See generally* ECF No. 40 at 4-6.

## III. ANALYSIS

### A. <u>The Court has Specific Personal Jurisdiction Over Paduganan Defendants</u>

### The Traditional (or *D'Jamoos*) Test

Under the traditional analysis, in order for personal jurisdiction to exist over Defendants in the Western District of Pennsylvania, each must have certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Thus, a defendant's conduct and connection with

---

[3] To the extent the Paduganan Defendants suggest Plaintiffs' filings were inappropriate, the Court clarifies that the provision of supportive Declaration evidence in response to a jurisdictional challenge is entirely properly. *Cf.* ECF No. 41 at 2 & n. 1 (Reply Brief objecting to identification of additional facts in Declaration "on which Plaintiffs now rely to establish personal jurisdiction").

the forum State must be such that she "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92, 297 (1980).  A plaintiff cannot unilaterally create the necessary contacts between the defendant and the forum; rather, "minimum contacts" arise only by "'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Burger King Corp.*, 471 U.S. at 475.[4]  Personal jurisdiction can exist in one of two forms: specific jurisdiction or general jurisdiction.  Specific jurisdiction applies where the cause of action is, as here, allegedly related to or arises from the defendant's contacts with the forum.  *See, e.g., Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003).[5]

      The traditional analysis of specific personal jurisdiction requires the Court to conduct a three-part test. *D'Jamoos*, 566 F.3d at 102. Initially, the court must determine (1) whether the defendant has "purposefully directed" activities toward the forum state and (2) whether the litigation "arises out of or relates to" at least one of those activities. *Id.* (quoting *Burger King Corp.*, 471 U.S. 462; *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. 408, 414 (1984)).  If

---

[4] As the Court of Appeals has similarly observed:

> The threshold requirement is that the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. [235, 253 (1958)]. To meet this requirement, the defendant's physical entrance into the forum is not necessary. *See Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184; *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993). A defendant's contacts, however, must amount to "a deliberate targeting of the forum." *O'Connor [v. Sandy Lane]*, 496 F.3d [312,] 317 [(3d Cir. 2007)]. The "unilateral activity of those who claim some relationship with a nonresident defendant" is insufficient. *Hanson*, 357 U.S. at 253.

*D'Jamoos*, 566 F.3d at 102-03.

[5] General jurisdiction applies where the defendant's contacts with the forum are "continuous and systematic" but are not related to the plaintiff's cause of action.  *Pennzoil Prods. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998).

the plaintiff has established the first two elements, the Court proceeds to the third part of the inquiry – whether the defendant's contacts with the forum state are such that maintenance of the action "does not offend traditional notions of fair play and substantial justice."[6]  *World-Wide Volkswagon,* 444 U.S. at 292 (citing *Int'l Shoe,* 326 U.S. at 316); *D'Jamoos,* 566 F.3d at 102.[7]

### The *Calder* Effects Test

Under the alternative "*Calder* effects" analysis, *Calder v. Jones*, 465 U.S. 783 (1984) - which the courts have applied where a plaintiff claims liability against a defendant based on an intentional tort - specific personal jurisdiction exists if (a) the plaintiff felt the brunt of the harm in the forum such that the forum was the focal point of said harm, and (b) the defendant expressly aimed her tortious conduct at the forum such that the forum was also the focal point of said tortious activity.  *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) (quoting *IMO Indus.*, 155 F.3d at 265–66).[8]  The *Marten* court further explained:

---

[6] With regard to the third prong of the specific jurisdiction analysis, the Court should consider the following factors: "'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'"  *Burger King,* 471 U.S. at 477 (quoting *World-Wide Volkswagen,* 444 U.S. at 292).

[7] Both the traditional inquiry under *D'Jamoos* and the inquiry under *Calder* may be applied to particular claims as appropriate.  *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citing *Remick v. Manfredy*, 238 F.3d 248, 255-56 (3d Cir. 2001)).  The Court largely concurs with Plaintiffs' analysis regarding the potential appropriateness of assessing specific personal jurisdiction as to the litigation, rather than as to individual claims, given their substantial factual overlap and their highly related nature (*e.g.*, defamation advancing purposes of infiltration/misappropriation and business harm).  ECF No. 40 at 8-9 & n. 8 (citing cases in this Court and our sister court in the Eastern District of Pennsylvania). *Cf. id.* at 13 ("Defendants' entire business strategy was to use their contacts with Pennsylvania to commit intentional torts to eliminate competition from Plaintiffs."); *cf also id.* at 18 (discussing *Remick v. Manfredy*, 238 F.3d 248, 260 (3d Cir. 2001) (finding specific jurisdiction over tortious interference claim that was "necessarily related" to contract performed in forum).  But in an abundance of consideration, the Court has looked to the Paduganan Defendant's alleged conduct under each claim and found the record clearly supports this Court's exercise of jurisdiction as to each Count.

[8] In *Calder*, the Supreme Court considered whether a California district court had specific jurisdiction over defendants, Florida residents, over a claim brought by an entertainer, a California resident, because of an article published by the National Inquirer, based on the effects of their Florida actions felt by the plaintiff

> [T]he effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state. *See, e.g., Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 n. 6 (3d Cir. 2003) (indicating the effects test is an alternative to "minimum contacts" analysis but declaring they both require a similar type of "intentionality" on the part of the defendant). Even if a defendant's conduct could cause foreseeable harm in a given state, such conduct does not necessarily give rise to personal jurisdiction in that state. "[T]he foreseeability that is critical to due process analysis is ... that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 559.

*Id.* In applying the *Calder* effects test, the Court of Appeals has instructed that a District Court need not consider the "intentional tort" or "brunt of the harm" elements unless the "expressly aimed" element is met. *Id.* To demonstrate that the defendant "expressly aimed" her tortious conduct at the forum, the plaintiff must show that

> "the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum'" [*IMO Indus.*, 155 F.3d] at 266. If a plaintiff fails to show that the defendant 'manifest[ed] behavior intentionally targeted at and focused on' the forum," *IMO Indus.*, 155 F.3d at 265 (quoting *ESAB Group Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir.1997)), the plaintiff fails to establish jurisdiction under the effects test.

*Marten,* 499 F.3d at 298. Finally, the *Marten* Court observed that under *Calder,* "the state of a plaintiff's residence does not on its own create jurisdiction over nonresident defendants. [Rather,

---

in California. The Court found that the Florida defendants expressly aimed their intentional, tortious activity at California because "they knew [the article] would have a potentially devastating impact upon [the California plaintiff]. And they knew that the brunt of that injury would be felt by [the California plaintiff] in the State in which she lives and works and in which the National Inquirer has its largest circulation." *Id.* at 789-90. Thus, the Supreme Court concluded that the Florida defendants could "reasonably anticipate being haled into court" in California. *Id.* at 790 (citing *World-Wide Volkswagen*, 444 U.S. at 297). As discussed in text, the Court finds an even greater basis for jurisdiction under the facts *sub judice* than that which the Supreme Court held sufficient in *Calder.*

j]urisdiction is proper when the state of a plaintiff's residence is 'the focus of the activities of the defendant out of which the suit arises.'" *Id.* (quoting *Keeton,* 465 U.S. at 780).

The Court emphasizes the purpose of application of the alternative *Calder* effects test to claims for intentional torts, as given by the Court of Appeals:  It is to ensure that assessment of personal jurisdiction incorporates a particular "type of intentionality", *i.e.*, it requires the foreseeability to defendant that her actions (being expressly aimed at the forum) would give rise to jurisdiction within the state. *Marten, supra.* And conversely, it is not premised solely on a plaintiff's residency or the foreseeability of the brunt of the harm being felt there.  That is, both tests at bottom require the similar intentionality of conduct, *i.e.*, of personal availment, which gives rise to the foreseeability of specific personal jurisdiction.  *Marten, supra*; *see also Burger King Corp.*, 471 U.S. at 475.

### Determination of Specific Personal Jurisdiction

The Paduganan Defendants move to dismiss asserting that they are not subject to personal jurisdiction in this litigation "based solely on events that allegedly occurred over the internet."  ECF No. 33 at 1. The Court concludes, however, that Plaintiffs have more than sufficiently established (through specific facts presented in the Amended Complaint and in responsive Declarations) the basis for Constitutional exercise of this Court's specific personal jurisdiction over the Paduganan Defendants as to all claims raised, and under both the traditional and *Calder* effects tests.

It is appropriate for the Court to look beyond the pleadings – here, to Paduganan's and Plaintiffs' Declarations in support – for purposes of considering a challenge to personal jurisdiction.  *See, e.g.*, *Allegheny Valley Bank of Pittsburgh v. Potomac Educational Foundation, Inc.*, 2015 WL 1021097, at *3 (W.D. Pa. March 9, 2015)).  And the Court concurs with

Plaintiffs' observation that Paduganan's self-serving Declaration, comprised of carefully-crafted denials of any purposefully directed activities at/in Pennsylvania, is insufficient to her challenge and neither a hearing nor further discovery are necessary to this ruling.  ECF No. 40 at 6; *cf.* ECF No. 33 at 7 ("Paduganan has sworn that she was not in Pennsylvania when she made any posts about any Plaintiff on social media").  Conversely, the DeGeorge and Morgan Declarations more than reasonably support the factual bases for personal jurisdiction and plausible liability flowing from the Amended Complaint - the factual averments of which are also

supported by other evidence of record.  *Cf.* ECF No. 33 at 13 ("Plaintiffs should not be able to simply make up allegations to hail out-of-state Defendants into this Court.").

The particulars of the Paduganan Defendants' purposeful availment under the traditional test are well set forth in Plaintiff's Brief in Opposition and the Court need not repeat them here. ECF No. 40 at 9-10 (noting multiple contacts/solicitations of Pennsylvania employee/residents, Pennsylvania lunch meeting, provision of defamatory material and direction for posting in Pennsylvania, and Paduganan's other direction of activities to/purposeful contact in Pennsylvania); *id.* at 11-13.[9]  And a *prima facie* showing of this Court's jurisdiction under the *Calder* effects has also been made.  *Id.* at 13-17.  *See also id.* at 13-14 & n. 6 (correctly identifying issue as "whether Plaintiffs have shown specific activity indicating [Paduganan] Defendants expressly aimed their tortious conduct at the forum" and noting Declaration evidence

---

[9] As Plaintiffs note, this is not a "remote work" case and the Paduganan Defendants' citation to those employee-employer cases is inapposite.  ECF No. 40 at 10-11 and n. 5.  *Compare* ECF No. 33 at 11-12. *Cf. id.* at 11 ("In remote-work cases ... a defendant's mere knowledge that an employee happens to reside in the forum state and conduct some work from home does not constitute purposeful availment.") (citing *Perry v. NAHB*, 2020 WL 5759766 at *5 (D. Md. Sep. 28, 2020) (collecting cases)).

that Paduganan targeted forum by, *e.g.*, soliciting Former Employee Defendants in Pennsylvania

and conducting "defamation spree" postings,[10] impugning Plaintiffs' reputations for alleged

conduct in Pennsylvania, including use of location-specific Pennsylvania Court records,


and targeted transmission to Pennsylvania resident employees and solicitations of responses, in

furtherance of wrongs).  *Id.* at 14-15, 17. [11]

     In sum, Plaintiffs have met their present evidentiary burden as to the Paduganan

Defendants' purposeful availment/intentional direction of activities at and within Pennsylvania to

accomplish each of the actionable acts enumerated in the Counts of the Amended Complaint

(*e.g.*, by soliciting Pennsylvania employees of Pennsylvania Plaintiffs to post defamatory content

to Paduganan's social media accounts, misappropriate Plaintiffs' business information and

participate in other tortious conduct directed against Plaintiffs' business and personal

relationships/reputations - including at a meeting held for that purpose in Pennsylvania[12] - and

---

[10] *Id.* at 14 ("Paduganan cannot escape being sued in Pennsylvania for defaming Plaintiffs by directing her Pennsylvania workers to do it for her, whether she is in the Commonwealth when it happens or not.").

[11] The Court largely concurs with Plaintiffs' discussion of the non-analogous cases cited by Paduganan Defendants.  *Id.* at 15-17 (distinguishing *Walden v. Fiore*, 571 U.S. 277, 290 (2014) (defendant's contacts with forum were solely virtual) and *Hadnagy v. Moss*, 2023 WL 114689 (E.D. Pa. Jan. 5, 2023) (defendant operated commercial website evaluated under the *Zippo* sliding scale)).  And it finds the Paduganan Defendants' reliance on *Remick* misplaced for similarly apparent reasons.  *Cf.* ECF No. 33 at 8-9 (citing *Remick* for principle that defamation plaintiff cannot meet *Calder* effects test when communication is "generally directed toward [and published throughout] a multistate [shared interest] community at large").  The *Remick* Court concluded on the facts of its case that a misappropriation of likeness claim could not be maintained where there was "no basis to conclude that the defendant expressly aimed their allegedly tortious activity at Pennsylvania . . . ."  *Id.* at 9.

[12] *Cf. Kyko,* 2020 WL 1159439, at *62 (individual defendant's visit to Pittsburgh for a meeting with other defendants "constituted a significant contact with the forum because it effectively tied the thread of the conspiracy").

directing/conspiring with/engaging the Former Employee Defendants to undertake those acts in Pennsylvania, with business and personal harm felt in Pennsylvania). Plaintiffs have thus also met their burden as to the Paduganan Defendants' reasonable anticipation (*i.e,.* the foreseeability) of being held accountable before this Court as a result of their conduct. Paduganan's Declaration fails to compel a different conclusion, and Defendants have failed to meet the burden applicable to their 12(b)(2) challenge.[13]  The Court observes the availability of reconsideration should discovery reveal a genuine fact question relevant to personal jurisdiction.

B.  **Plaintiffs State a Claim under the CFAA**

In seeking dismissal of this claim under Rule 12(b)(6), the Padugunan and Former Employee Defendants assert that the CFAA - in requiring unauthorized access to a "protected computer" which results in obtaining unauthorized information therefrom - does not encompass unauthorized access of online ("web") account information.[14]  The Paduganan Defendants also assert that Plaintiffs failed to plead their indirect liability for violations committed by Former Employee Defendants Noss and Morgan. ECF No. 33 at 15-18; *see also* ECF No. 35 at 8-9.

---

[13] *See* ECF No. 40 at 12-13 (noting that assertions Plaintiffs' allegations are untrue are insufficient); *O'Connor v. Sandy Lane Hotel Co.,* 496 F.3d 312, 324 (3d Cir. 2007) (where minimum contacts are shown, defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable").

Defendants' observation that, were the Court to find it lacked personal jurisdiction, Plaintiffs' could still file counterclaims in Paduganan's preferred jurisdiction (the California location of her later-filed litigation) does not affect this holding.  ECF No. 41 at 3, n. 3.

[14] The Paduganan Defendants, however, limit this basis for dismissal to claims as to conduct by Former Employee Defendants Noss (who allegedly accessed LRC's Microsoft Office Suite information remotely by unauthorized password regeneration) and Hickey (who allegedly provided an online account password and information to Paduganan), and except Defendant Morgan (who allegedly improperly accessed information from an LRC computer).  They do not move to dismiss Defendant Morgan on this basis because their argument relies on an interpretation of the CFAA as requiring, by the word "access", the actual unauthorized handling of a physical computer.  ECF No. 33 at 17 (citing *Eagle v. Morgan,* 2011 WL 6739448 at *7 (E.D Pa. Dec. 22, 2011).  Under the Court's analysis, and in accordance with the Supreme Court's, that distinct is moot. *See* text.

The CFAA defines "computer" as "an electronic . . . or other high speed processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device . . . ." 18 U.S.C. § 1030(e)(1).  Its categories for potential civil and criminal liability include: "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] . . . information from any protected computer;" "knowingly and with intent to defraud, access[ing] a protected computer without authorization, or exceed[ing] authorized access . . . ;" "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, caus[ing] damage and loss;" and knowingly and with intent to defraud trafficking "in any password or similar information through which a computer may be accessed without authorization, if . . . such trafficking affects interstate or foreign commerce." 18 U.S.C. §§ 1030(a)(2), (a)(4), (a)(5), (a)(6). It is, as Plaintiffs observe, an "electronic trespass statute".  ECF No. 39 at 6.

The Court largely concurs with Plaintiffs' analysis of the case law and concludes that the CFAA means what it says, *i.e.,* it prohibits accomplishment of unauthorized "access to" a "protected computer", including a restricted-access computer system and any data storage or communications facility "directly related to or operating in conjunction" therewith.  In particular, it extends liability to unauthorized, internet-facilitated access to "information on computers beyond the devices in the Defendants' hands. Online accounts are the vehicle, not the destination."  ECF No. 39 at 8.  *See*

*generally* ECF No. 39 at 6-13.  *See also Van Buren v. United States,* 141 S. Ct. 1648 (2021)

(well-discussed in Plaintiffs' Brief in Opposition at ECF No. 39). *Cf.* ECF No. 35 at 15-18.

In further response to Defendants' briefing, the Court notes that *Van Buren*, a felony case, was reversed and remanded on grounds that the CFAA's criminal penalties do not encompass a police officer using his control-car computer to access a law enforcement database and run a license plate search for personal profit.  That is, the Supreme Court held that the CFAA does not criminalize utilizing authorized access to obtain authorized "computer information" in a "computer system", even if it is done for improper purposes.  The Paduganan Defendants misapprehend the significance of *Van Buren* to the case *sub judice*.  The Supreme Court's analysis of applicability of the CFAA did not stop – indeed, it did not pause – with its observation that the license plate search was conducted not on the control-car computer directly in front of Van Buren, but in a remote "computer system", on information/data stored in "protected computers", *i.e.*, computing devices/related facilities with restricted entry/access.  The Court's decision discussed (a) the accomplishment of (in that case, authorized) access to the protected computer system and (b) the initiation/accomplishment of the (in that case, authorized) information-retrieval process.  It canvased those facts while explicating its holding on other grounds.  *See generally* 141 S.Ct. 1648.[15]  *Cf.* ECF No. 41 at 4.

And the Court notes, as do Plaintiffs, that *Christie v. Nat'l Inst. for Newman Stud.*, 2019 WL 1916204, at *6 (D.N.J. Apr. 30, 2019); *Psychas v. Dist. Dep't of Transp.*, 2019 WL 4644503 (D.D.C. Sept. 24, 2019) and *Eagle v. Morgan*, 2011 WL 6739448 (E.D. Pa. Dec. 22, 2011), were decided prior to *Van Buren*, *supra.*  The Court finds *Christie*, in which an employer accessed the

---

[15] *See also id.* at 1652 (noting that CFAA "cover[s] any information from any computer 'used in or affecting interstate or foreign commerce or communication' [and a]s a result, the prohibition now applies—at a minimum—to all information from all computers that connect to the internet") (citing 18 U.S.C. §§ 1030(a)(2)(C), (e)(2)(B)).

personal emails the former-employee had directed to the employer's computer by automatic download (*i.e.*, the employer accessed only its own computer and content thereon) not applicable to the present facts.  2019 WL 1916204 at *8.  And it finds the *Psychas* and *Eagle* decisions (and the decision in *Graham Eng'g Corp. v. Adair*, 2021 WL 9204331 (M.D. Pa. Feb. 10, 2021) which relied on *Psychas*), unpersuasive and misguided in their interpretations of CFAA statutory provisions sanctioning "unauthorized access" as confined to direct/hands-on access to the physical computer devices themselves. *See* ECF No. 40 at 19-21.  *Cf.* ECF No. 39 at 9-10 ("Even before the *Van Buren* opinion was published, the vast majority of courts agreed that unauthorized access to web-based accounts violates the CFAA, 'even if the defendant had permission to use the physical computer in question.'") (quoting *Hill v. Lynn*, No. 17 C 06318, at *5–6 (N.D. Ill. June 12, 2018) and extensively citing other cases).

Plaintiffs have plausibly stated claims clearly encompassed under the CFAA, which extends civil liability for internet-facilitated unauthorized access to and unauthorized retrieval of information from "protected computers", *i.e.*, high speed data processing devices and/or related data storage or communications facilities to which access is restricted. *Cf.* ECF No. 39 at 11 n. 6 (citing DOJ successful criminal prosecutions under the CFAA based on unauthorized remote access to protected web accounts).

Finally, as to the objection that Plaintiffs failed to plead the Paduganan Defendants' indirect liability for violations committed by Former Employee Defendants Noss and Morgan, ECF No. 33 at 17-18, the Court refers those Defendants to the Federal Rule 8 notice pleading standards and Section II(A) above. Plaintiffs have plausibly alleged, with evidentiary support, that the Paduganan Defendants solicited, directed, encouraged, engaged, and/or induced the Former Employee Defendants to violate the CFAA.  The indirect liability provided under the

CFAA extends to the conduct alleged. *See e.g.*, *Teva Pharms. USA, Inc. v. Sandhu*, 291

F.Supp.3d 659, 671 (E.D. Pa. 2018).[16] And as to the Former Employee Defendants objections

that Plaintiffs failed to sufficiently plead their alleged actions were unauthorized - in the absence

of *e.g.*, identified IT policies, procedures and/or particularized employment terms – the Court

finds no basis for any such asserted pleading requirement for a claim under the CFAA. *Cf. LVRC*

*Holdings LLC v. Brekka*, 581 F.3d 1127, 1136 (9th Cir. 2009) (noting that employee's access of

company's website information after he left its employ would constitute accessing a protected

computer "without authorization" for purposes of the CFAA); ECF No. 35 at 9 (suggesting that

Defendant Morgan remained "authorized" to continue to "access" LRC computer after

resigning).

### C. **Plaintiffs State a Claim for Tortious Interference Against Defendants**

Count VII of the Amended Complaint alleges a claim against all Defendants for Tortious

Interference.  The Paduganan Defendants assert that (a) the allegations against them amount to

nothing more than "permissible ordinary competition" and (b) to the extent this claim relates to

Plaintiffs' client contracts, it is not maintainable because Plaintiffs have not shown the contracts

"were anything other than terminable at-will." ECF No. 33 at 19-21.

The elements of this claim are: (1) existence of a contractual or prospective contractual

relation between the complainant and a third party; (2) purposeful action on the part of the

---

[16] *See also* ECF No. 40 at 21-22 (citing *Ashcroft* and *Bell Atlantic Corp*, *supra,* in noting that the Paduganan "Defendants'[asserted] role in the CFAA violations is obvious . . . ."). *Cf.* ECF No. 41 at 5 (suggesting defenses, including Plaintiffs' failure to allege that Noss or Morgan "worked for Thrive, or even that they had any contact with Ms. Paguganan, *at the time of their alleged access*") (emphasis added); ECF No. 33 at 17 (CFAA provides no basis "to justify imputing liability from individuals who access a computer without authorization to others who may eventually benefit from their access.") (citing *Dresser-Rand Co. v. Jones*, 957 F. Supp. 2d 610, 615 (E.D. Pa. 2013)).

defendant, specifically intended to harm the existing or to prevent a prospective relation; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct. *Elite Transit Sols., LLC v. Cunningham*, 2021 WL 6286384, at *4 (W.D. Pa. Dec. 6, 2021).

And the elements of a possible "competition privilege" defense under Section 768 of the Second Restatement of Torts, adopted in Pennsylvania - and expressly applicable only to the subcategory of contracts which are *existing and terminable at will* - are: (1) the relation concerns a matter involved in the competition between the actor and the other and (2) the actor *does not employ wrongful means* and (3) his action does not create or continue an unlawful restraint of trade and (4) his purpose is at least in part to advance his interest in competing with the other. *CGB Occupational Therapy*, *Inc. v. RHA Health Servs., Inc.*, 357 F.3d 375, 388 (3d Cir. 2004)(quoting Restatement (Second) of Torts § 768 (1979)) (emphasis added); *see also Gilbert v. Otterson*, 550 A.2d 550, 554 (Pa. Super. Ct. 1988).

An assertion that Plaintiffs have failed to plausibly allege that the Paduganan Defendants "employ[ed] wrongful means" or "violated the [social/business] rules" of business competition is patently frivolous and Defendants cannot on this motion seek the shield of a "competition privilege" defense. *See* ECF No. 40 at 24-25 (further explaining that "wrongful means" can be shown by "independently actionable conduct", as here alleged).[17]

---

[17] *Id.* at 24 ("Plaintiffs have met this standard, showing Defendants' misappropriation of trade secrets and confidential information, unfair competition, violations of the CFAA, defamation, and commercial disparagement.") (citing *Elias Indus., Inc. v. Kissler & Co. Inc.*, 2021 WL 2141509, at *8 (W.D. Pa. May 26, 2021)).  *Cf.* ECF No. 41 at 5-6 (Paduganan Defendants concurring, on Reply, that competition privilege cannot be maintained on motion to dismiss where independently actionable conduct is adequately pled and noting they would renew this argument at summary judgment).

*Compare* ECF No. 33 at 20 (providing as example of "normal competitive behavior", that "Paduganan developed a pitch for Thrive employees to use specifically with performers that Paduganan was aware were clients of LRC") *with* ECF No. 31 and *supra* (Plaintiffs' allegations that Paduganan Defendants developed a pitch for Thrive employees, including actionably purloined former Plaintiffs' employees, to

As Plaintiffs note, this action alleges tortious interference with both client and employee contracts, and Plaintiffs' contracts in both categories were "at will"; but that aspect is relevant only to Defendants' entitlement to the competition privilege defense were other conditions met (which they are not).  It is *not* a bar to Plaintiffs' recovery for tortious interference with existing or prospective contractual relationships.

### D.  Plaintiffs State Claims Under Federal & State Trade Secrets Acts

The Former Employee Defendants (unlike the Paduganan Defendants) move for dismissal of Counts I and II, Plaintiff's claims under Federal and Pennsylvania statutory protections for trade secrets, respectively.[18] Defendants base their objections primarily on the Amended Complaint's asserted lack of sufficient identification of the particular "trade secrets" at issue.  Their citation to summary judgment requirements is, however, inapposite[19] and the Court again reminds Defendants of the notice pleading standard applicable at this juncture.

Claims for misappropriation of trade secret(s) under either the DTSA or PUTSA need only be alleged with sufficient particularity to separate it from knowledge common to the trade

---

leverage their defamation/"smear" campaign in targeting performers identified as Plaintiffs' clients through misappropriation of confidential/proprietary/otherwise protected business information).

[18] The Federal and Pennsylvania Trade Secrets Acts ("DTSA" and "PUTSA") protect "information that: (a) the owner has taken reasonable means to keep secret; (b) derives independent economic value, actual or potential, from being kept secret; (c) is not readily ascertainable by proper means; and (d) would be of economic value to others who cannot readily access it." *Etimine USA Inc. v. Yazici*, 2021 WL 1131256, at *4 (W.D. Pa. Mar. 24, 2021) (citing 18 U.S.C. § 1839(3); 12 Pa. C.S.A. § 5302).

Defendants' assertions to the contrary notwithstanding, "whether a plaintiff has taken sufficient measures to protect its trade secrets is a question of fact more appropriately determined with a fully developed record." *Etimine*, *supra* at *5 (citing *Ctr. Pointe Sleep Assocs., LLC v. Panian*, 2009 WL 789979 at *3 (W.D. Pa. Mar. 18, 2009)). *See also* ECF No. 39 at 5 (correcting any misapprehension that Plaintiffs allege the password which Defendant Hickey shared with Defendant Padugana was itself a trade secret vs. evidence of Plaintiff's protective measures). *Cf.* ECF No. 42 at 3 n. 1 (seeking dismissal of counts against Hickey on erroneous assertion Plaintiffs make no allegation he misappropriated any other information).

[19] *Cf. Givaudan Fragrances Corp. v. Krivda*, 639 F. App'x 840, 845 (3d Cir. 2016) (cited in ECF No. 39 at 2).

and "to permit the defendant to ascertain at least the boundaries within which the secret lies".

*Oakwood Labs., LLC v. Thanoo*, 999 F.3d 892, 906, 907 n. 15 (3d Cir. 2021) (reversing and

remanding where alleged misappropriation included multiple areas of particularized work

product and business strategies, noting that a complaint with far less factual specificity could no

doubt "still survive dismissal"). The Amended Complaint alleges categories of information

which, as in *Oakwood*, indicate the statutory boundaries Defendants are charged with crossing

and meet the present notice requirements.  *See* ECF No. 31; ECF No. 39 at 3-4.[20]

To the extent Defendants assert that any allegedly misappropriated "trade secret" was

readily obtainable with a degree of ease sufficient to exclude any plausible application of the

Acts, the Court rejects the assertions for self-evident reasons. *Cf.* ECF No. 35 at 6-7.[21]  To the

extent they assert that because Hickey, like any other member of the public, could purchase

content and services through an OnlyFans account and thus access and potentially compile all

information identified in the Amended Complaint from publicly-available information, the Court

---

[20] *Cf.  Elite Transit Sols., LLC v. Cunningham*, 2021 WL 6286384, at *6 (W.D. Pa. Dec. 6, 2021), report and recommendation adopted sub nom. *Elite Transit Sols., LLC. v. Cunningham*, 2022 WL 783426 (W.D. Pa. Mar. 15, 2022) (denial of motion to dismiss where trade secret allegations included "confidential carrier and client information, profit margins, and shipping routes").  The types of work product specified in the Amended Complaint are inherently sufficiently supported as plausible trade secrets to maintain the claim at this juncture, and the Court finds the decision in a case pleading only "broad, unexplained and vague categories of information" distinguishable. ECF No. 42 at 1 (citing *IQVIA, Inc. v. Breskin*, 2023 WL 2588450, at *4 (E.D. Pa. Mar. 20, 2023)).

[21] *Cf.* ECF No. 39 at 16 (finding "argument that the entirety of Plaintiffs' client list could be "readily compiled" based on public information . . . presumptuous" and reiterating allegation that "that their client and referral partner lists are not publicly available").  *Cf. also* ECF No. 42 at 3 (asserting analogy to *Elias Indus., Inc. v. Kissler & Co. Inc.*, 2021 WL 2141509  (W.D. Pa. May 26, 2021), dismissing trade secret claim of customer list/pricing "already known to third parties" and "readily ascertainable"),

Defendants assert entitlement to dismissal of these Counts because "Plaintiffs' client lists and pricing can be readily compiled through legitimate means such as a search of their numerous social media platforms where they promote clients and advertise pricing", Defendant Hickey could "legitimate[ly] access client and pricing information by purchasing content as a customer", and individual clients are not subject to confidentiality constraints so could divulge their own information.  *Id.*  Defendants fail to recognize the significance of the effort, time and expense that would be required to compile the work product alleged to have been misappropriated.

reiterates that (a) Defendants' reading of the allegations is unduly crabbed and (b) the pending

motions are for dismissal as opposed to summary judgment.  As addressed in Plaintiffs' Brief in

Opposition, the material alleged to have been misappropriated includes material that by its very

nature was more than "plausibly" not obtainable or "readily" obtainable absent either

authorization or actionable misconduct.  In addition, the Court views, *e.g.*, marketing proposals

reflecting the consultant's differing strategies and methodologies as self-evidently within the

plausible scope of statutory protections for trade secrets. *Compare* ECF No. 35 at 6.  And the

Court largely concurs with Plaintiffs' briefing regarding Defendants' other objections to these

claims.  *See* ECF No. 39 at 5-6.

### E.  Plaintiffs State a Claim for Unjust Enrichment in the Alternative

The Former Employee Defendants move for dismissal of Count VIII on grounds that the

quasi-contract claim is unavailable where each Defendant had a contract with either LRC or IE.

ECF No. 35 at 10.  Plaintiffs respond that their unjust enrichment claim is properly pled in the

alternative.  ECF No. 39 at 13-15.

A contract implied-in-law, known as a "quasi-contract" or "unjust enrichment" is a legal

fiction created by common law courts to permit recovery by contractual remedy in cases where

there is found to be, in fact, no contract, but where circumstances are such that justice warrants a

recovery as though there had been a promise.  *See* Restatement (Second) of Contracts, Section 4

(1981).  Thus, a party with an otherwise adequate remedy at law cannot claim unjust enrichment.

However, as there are sometime inadequacies in contractual remedies at law, it is widely

accepted practice to pursue unjust enrichment in the alternative at the pleading stage.

Indeed, Federal Rule of Civil Procedure 8(d) permits plaintiffs to plead such alternative

legal theories, even if they can only recover under one. *See, e.g., Vantage Learning (USA), LLC*

*v. Edgenuity, Inc*., 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017) ("Rule 8(d)(2) nonetheless permits a plaintiff to plead unjust enrichment in the alternative in certain circumstances, even where the existence of a contract would preclude recovery. . . ."); *S.V.B. Assocs., Inc. v. Lomb*, 2020 WL 5816967, at *9 (W.D. Pa. Sept. 30, 2020) (pleading in the alternative appropriate "where (i) the contract at issue covers only a part of the relationship between the parties, or [where] (ii) the existence of a contract is uncertain or its validity is disputed by the parties").

Here, Defendants challenge the scope, existence and/or validity of the contracts both (a) expressly as a basis for a defendant's liability to a non-signatory Plaintiff and (b) implicitly, as to Noss and Morgan, for deficiencies related to those defendants' length of employment prior to entry into agreements. *See* ECF No. 35 at 3 ("After *approximately a year* of working at LRC, both Ms. Noss and Ms. Morgan were asked to sign a *Non-Disclosure and NonSolicitation Agreement* with LRC.") (emphasis in original). Plaintiffs may without a doubt plead unjust enrichment in the alternative at this juncture, despite their assertion of breach of contract. *See, e.g., Southersby Dev. Corp. v. Twp. of S. Park*, 2015 WL 1757767, at *15 (W.D. Pa. Apr. 17, 2015) ("[P]laintiffs may plead an unjust enrichment claim in the alternative with a breach of contract action where there is some dispute as to whether a valid, enforceable written contract exists.").

As Plaintiffs note, the request for dismissal of this claim is premature.  ECF No. 39 at 13.[22]

### F.  Plaintiffs State a Claim for Unfair Competition

The Former Employee Defendants move for dismissal of Count IX on grounds that Plaintiffs' fail to sufficiently plead either that Defendants are competitors or that they

---

[22] Former Employee Defendants' assertion in their Reply Brief, that the Unjust Enrichment (and other claims) fail because the Trade Secret Claims fail is mooted by the Court's determination to the contrary. ECF No. 42 at 4.,

misappropriated particularized information as required to support a claim of unfair competition. The Court concurs with Plaintiffs that Defendants' "interpretation of the Amended Complaint and the law is too narrow."  ECF No. 39 at 15 (observing that Pennsylvania courts recognize a cause of action for unfair competition "where there is evidence of, among other things, trademark, trade name, and patent rights infringement, misrepresentation, tortious interference with contract, improper inducement of another's employees, and unlawful use of confidential information") (quoting *Elite Transit Sols., LLC v. Cunningham*, 2021 WL 6286384, at \*7 (W.D. Pa. Dec. 6, 2021), report and recommendation adopted sub nom. *Elite Transit Sols., LLC. v. Cunningham*, 2022 WL 783426 (W.D. Pa. Mar. 15, 2022)).

As Plaintiffs further observe, Former Employee Defendants have not challenged the tortious interference claims against them and those claims alone are sufficient to the plausible claim of unfair competition.  ECF No. 39 at 15 (also correctly anticipating that the Court would find that trade secrets and confidential information are sufficiently identified in the Amended Complaint under the currently applicable pleading standard).[23]

In addition, whether or not Defendants acted as employees or independent contractors of Paduganan Defendant Thrive, or competed with Plaintiffs, or engaged in alleged misconduct within the scope of their employment (as employees or agent/non-agent independent contractors) are questions of fact.  *Id.* (citing *ATT Co. v. Winback and Conserve Program, Inc*., 42 F.3d 1421, 1435 (3d Cir. 1994).

### G.  Plaintiffs State a Claim for Conspiracy Against Defendants

---

[23] Cf. ECF No. 35 at 11-12.  Here again, Defendants minimize the scope and nature of allegedly misappropriated information, asserting analogy to cases in which "courts have denied protection to customer lists which are easily generated from trade journals, ordinary telephone listings, or an employee's general knowledge of who, in an established industry, is a potential customer for a given product . . . ."  *Id.* at 11 (quoting *Alturnamats, Inc. v. Harry*, 2008 WL 4279814, at \*11 (W.D. Pa. Sept. 16, 2008)).

The Former Employee Defendants move for dismissal of Count X on grounds that the intracorporate immunity doctrine bars Plaintiffs' civil conspiracy claims against them.  Under the intracorporate immunity (or intracorporate conspiracy) doctrine, a conspiracy cannot be alleged as between a corporation-officer or employer-employee, so long as the officer/employee is acting within the course and scope of their employment.  *Parker v. Learn The Skills Corp*., 219 F. App'x 187, 189-90 (3d Cir. 2007) (citing *Gen. Refractories Co. v. Fireman's Fund Ins. Co*., 337 F.3d 297, 313-14 (3d Cir. 2003)).  In other words, "a plaintiff cannot assert that an entity conspired with a person acting as the entity's agent."  ECF No. 39 at 12 (citing *Marshall v. Fenstermacher*, 388 F. Supp. 2d 536, 553 (E.D. Pa. 2005).  However, an exception applies 'when the officer/employee has acted "in a personal, as opposed to official, capacity", *Gen. Refractories*, *supra* at 412, *i.e.*, "for their sole personal benefit" and thus outside the course and scope of their agency.  *Kolakowski v. Washington Hosp*., 2022 WL 874285, at *5 (W.D. Pa. Mar. 24, 2022).

Here, the allegations of the Amended Complaint are sufficient to result in the Former Employee Defendants' ultimately being found to have been independent contractors (vs. agents) who engaged in the conduct alleged purely for their own profit and in conspiracy with the Paduganan Defendants.[24]  The claim of conspiracy is a contextually plausible one.  It is correct that an officer, partner or employee of an entity defendant acting in that capacity cannot conspire

---

[24] Defendants need not have "owned a business to manage OnlyFans accounts" to have acted for their sole benefit. Trade secrets may be misappropriated for direct personal profit as well as use.  *Cf.* ECF No. 42 at 4. *Cf. also* ECF No. 35 at 10-11 (similarly asserting that only Thrive could have benefited from alleged misappropriation of Plaintiffs' business information).

The Court notes in addition that the present record does not appear to preclude an ultimate finding that the Former Employee Defendants committed actionable misconduct for sole personal benefit in conspiracy with Paduganan after her solicitation but prior to forming an independent contractor, employee or agency relationship with Paduganan Defendants.

with said entity. However, on the present record, neither the Paduganan Defendants' challenge to the adequacy of Plaintiff's allegations, nor their own unclear averments regarding relationships with the Former Employee Defendants, nor averments regarding a Defendant's conduct or the capacity in which a given Defendant acted, is sufficient to undermine the maintainability of Plaintiffs' claims at this juncture. As elsewhere, additional facts may well be uniquely within the possession of Defendants and will inform the parties' post-discovery positions and pleadings, and this Court's future rulings.

### H.  Plaintiffs State the Claims for Misappropriation of Confidential Information and Breach of Contract Alleged

Finally, these Defendants move for partial dismissal of the misappropriation of confidential information (Count III) and breach of contract claims (Counts V and VI) against the LLC Plaintiff not signatory to the particular Defendant's underlying contract (*i.e.*, dismissal of these claims by LRC against Hickey and dismissal of these claims by IE against Noss and Morgan).

As succinctly addressed in Plaintiffs' Brief in Opposition, ECF No. 39 at 18, Former Employee Defendants appear to fundamentally misapprehend the Pennsylvania common law claim of misappropriation of confidential information, for which there is no contractual (employment or other) contractual prerequisite. Rather, it is simply "the procurement, by improper means, for the purpose of advancing a rival business interest, of information about another's business." *Arconic Inc. v. Novelis Inc.*, 2020 WL 7247112, at *19 (W.D. Pa. Dec. 9, 2020) (noting that Pennsylvania courts still recognize claims for misappropriation of confidential or proprietary information that does not qualify as a "trade secret" under the PUTSA). *Cf.* ECF No. 35 at 13 (presuming a claim under an employee's duty of loyalty). And in requesting partial dismissal of the breach of contract claims, Former Employee Defendants overlook or unduly

discount the content of the Amended Complaint and the express provisions of the Agreements identifying each other LLC Plaintiff as an affiliate and third-party beneficiary.  *See* ECF No. 39 at 19-21 (discussing third party beneficiary status under both *Spires v. Hanover Fire Ins. Co.*, 70 A.2d 828, 830–31 (Pa.1950) and the Restatement (Second) of Contracts) (citing cases).  *See also* ECF No. 31; ECF Nos. 38-1 and 38-2.

## ORDER ON MOTIONS

For the foregoing reasons:

The Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 31, filed by the Paduganan Defendants at ECF No. 32 is hereby **DENIED**.

The Motion to Partially Dismiss Plaintiff's Amended Complaint filed by the Former Employee Defendants at ECF No. 34 is hereby also **DENIED**.

**IT IS SO ORDERED.**

Dated:  August 28, 2023                                                BY THE COURT:

_____

LISA PUPO LENIHAN
United States Magistrate Judge

cc:     All Counsel
        *Via Electronic Mail*